**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

**PAMELA KAY PIZIAK,**

     **Plaintiff,**

**vs.**                             **CIVIL ACTION NO. 5:16-CV-08843**

**NANCY A. BERRYHILL,[1]
ACTING COMMISSIONER OF
SOCIAL SECURITY,**

     **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

     This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered September 15, 2016 (Document No. 3.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 10 and 13.)

     Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for judgment on the pleadings (Document No. 10.), **GRANT** Defendant's request to affirm the

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

decision of the Commissioner (Document No. 13.); **AFFIRM** the final decision of the Commissioner and **DISMISS** this action from the docket of the Court.

**Procedural History**

The Plaintiff, Pamela Kay Piziak (hereinafter referred to as "Claimant"), protectively filed her application for Title II benefits on October 22, 2013, alleging disability since October 1, 2013 due to "[h]earing loss, knee replacement, bi-polar, fibromyalgia, arthritis [left knee], sleep problems".[2] (Tr. at 145-146, 158.) Her claim was initially denied on February 6, 2014 (Tr. at 75-79.) and again upon reconsideration on April 9, 2014. (Tr. at 83-89.) Thereafter, Claimant filed a written request for hearing on June 6, 2014. (Tr. at 90-91.) An administrative hearing was held on January 4, 2016 before the Honorable Valerie A. Bawolek, Administrative Law Judge ("ALJ"). (Tr. at 28-46.) On April 19, 2016, the ALJ entered a decision finding Claimant had not been under a disability at any time since her alleged onset date through the date of the decision. (Tr. at 8-27.) On June 3, 2016, Claimant sought review by the Appeals Council of the ALJ's decision. (Tr. at 6-7, 227-228.) The ALJ's decision became the final decision of the Commissioner on July 23, 2016 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-5.) On September 14, 2016, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.) The Commissioner filed an Answer and a Transcript of the Administrative Proceedings. (Document Nos. 7 and 8.) Subsequently, Claimant filed a Brief in Support of Motion for Judgment on the Pleadings (Document No. 10.),

---

[2] Claimant also asserted that she has hearing aids in both ears, she receives shots in her right knee and takes medication, she takes medication for her bipolar and panic attacks, and her fibromyalgia "in remission after taking medication 3 yrs", and she takes Ambien for her sleep issues. (Tr. at 158.) She takes "preglaucoma meds"; has poor vision and bunions; she receives shots in her elbow and shoulder for arthritis; has severe hot flashes for which she takes hormones; she also takes "stomach meds at night, restless leg meds, overactive bladder meds, and high blood pressure meds." (Id.)

in response, the Commissioner filed a Memorandum in Support of Judgment on the Pleadings (Document No. 13.), to which Claimant filed a reply. (Document No. 14.) Consequently, this matter is fully briefed and ready for resolution.

**Claimant's Background**

Claimant was 60 years old on the alleged onset date and throughout the relevant time period; she would be defined as an individual of advanced age by the Regulations. See 20 C.F.R. § 404.1563(e). (Tr. at 145.) Claimant has a high school education, a college degree, plus a Masters' degree in education. (Tr. at 159.) Claimant worked as a middle school teacher for about thirty-five years in the school district for Raleigh County, West Virginia. (Id.) She stopped working when she began experiencing panic attacks and having trouble standing as required on the job due to her knee problems. (Tr. at 35-36.)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any

of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." Id. § 404.1520a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. § 404.1520a(c). Those sections provide as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.

(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 404.1520a(d)(1).[3] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and

---

[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 404.1520a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 404.1520a(d)(3). The Regulations further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 404.1520a(e)(4).

## <u>Summary of ALJ's Decision</u>

In this particular case, the ALJ determined that Claimant met the requirements for insured worker status through December 31, 2018. (Tr. at 13, Finding No. 1.) Moreover, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since October 1, 2013, the alleged onset date. (Id., Finding No. 2.) Under the second inquiry, the ALJ found that Claimant had the following severe impairments: degenerative joint disease and hearing loss. (Id., Finding No. 3.) At the third inquiry, the ALJ concluded Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 15, Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform light work as defined in the Regulations "except she could never climb ladders, ropes, or scaffolds; never kneel or crawl; and never have exposure

to a loud noisy environment." (Tr. at 16, Finding No. 5.) At step four, the ALJ found Claimant was capable of performing her past relevant work as a teacher and that this work did not require the performance of work-related activities precluded by her current RFC. (Tr. at 20, Finding No. 6.) Finally, the ALJ determined Claimant had not been under a disability from October 1, 2013 through the date of the decision. (Id., Finding No. 7.)

**Claimant's Challenges to the Commissioner's Decision**

First, Claimant argues that the ALJ erred by failing to include limitations, specifically that Claimant would need a work environment that was "fairly quiet", that were found by Judith Brendemuehl, M.D., who testified during the administrative hearing, and whose opinion the ALJ gave great weight. (Document No. 10 at 6-7.) In addition, the ALJ gave significant weight to two State agency consultants' opinions, however, their limitations, specifically that Claimant would be limited to "occasional hearing" in both ears, were not appropriately reconciled with the RFC assessment, and further, ignores the realities of a sixth grade classroom noise level. (Id. at 8.) Claimant contends that the ALJ's RFC restriction from a loud noisy environment did not adequately address the limitations cited by the medical experts, and the ALJ failed to explain why those limitations were not included in the RFC, thus necessitating remand. (Id. at 8-9.)

Finally, Claimant argues that the evidence from her treating physician, Sidney C. Lerfald, M.D. that was submitted to the Appeals Council warrants remand, because it is new and material evidence that could reasonably be expected to change the ALJ's decision, as this opinion is the only evidence from a treating physician, and further, he found Claimant had moderate difficulties based on her severe physical impairments. (Id. at 10-11.) Claimant asks that this matter be reversed and remanded for an award of benefits, or alternatively, be remanded so that the Commissioner

can correct the errors made below. (Id. at 13.)

In response, the Commissioner argues that substantial evidence supports the ALJ's decision that Claimant could perform her past relevant work as a school teacher. (Document No. 13 at 2.) Claimant fails to consider that both State agency medical consultants opined that she could perform her past relevant work, and further, the vocational expert testified that an elementary school teacher's work environment satisfies the noise restriction espoused by Dr. Brendemuehl. (Id. at 8-9.) The Commissioner also points out that Claimant did not leave her job due to the noise, and her arguments concerning classroom noise levels are speculative and unsupported in the evidence of record. (Id. at 9-10.) The Commissioner reminds the Court that the RFC assessment is the responsibility of the ALJ, and she was not required to adopt every degree of limitation opined from the medical source opinions, regardless of the great or significant weight she afforded the opinions. (Id. at 11.)

Next, the Commissioner asserts that Dr. Lerfald's May 25, 2016 medical source statement did not constitute new and material evidence necessitating remand because substantial evidence supports the ALJ's decision. (Id. at 12-13.) Dr. Lerfald did not opine that Claimant was precluded from any kind of work, and further, he contradicts his own treatment notes. (Id. at 13-14.) His moderate findings are also contradicted by the State agency consultants' opinions, upon which the ALJ was entitled to rely, and provide no reasonable basis that the decision would be changed in this matter. (Id. at 14-15.) In sum, the Commissioner requests the Court to affirm the ALJ's decision. (Id. at 15.)

Claimant states in reply that the Commissioner is wrong in her assertion that any medical source, provider, consultant or expert opined that Claimant could perform her past relevant work.

(Document No. 14 at 1-2.) Further, the ALJ, not the vocational expert, has the duty to pose hypothetical questions that include all claimant's impairments and translate a vocational expert's responses into work related functional limitations. (Id. at 2.) Any conflicts in the hearing testimony are to be reconciled by the ALJ, and is not Claimant's burden. (Id.) Finally, Claimant asserts that when the ALJ gave great and significant weight to multiple medical expert opinions, the Regulations required her to either include the limitations found by those experts in her RFC determination, or to explain her reasons and provide evidence for rejecting those limitations. (Id. at 3.) Because of her failure to provide suitable explanation, the decision is not supported by substantial evidence, and this case should be reversed and remanded with an award for benefits or remanded for the ALJ to correct the errors made below. (Id. at 3-4.)

**The Relevant Evidence of Record**[4]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and discusses it below.

Evidence Relating to Hearing Loss:

Claimant underwent a hearing evaluation on December 4, 2012 performed by Pamela Klug Whitmore, M.A., CCC-A, at the Beckley Hearing Center. (Tr. at 235.) She had a speech discrimination score of 88% at 65dB in her right ear and 92% at 65dB in her left ear. (Id.) Ms. Whitmore referred the results to Dr. Chapman[5] in order for Claimant to receive a hearing aid fitting. (Tr. at 237.) On March 18, 2013, Claimant received hearing aids. (Tr. at 236.)

At the State agency's request, Kip Beard, M.D., performed a consultative physical

---

[4] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

[5] Though not expressly referenced by the parties, the undersigned notes that Melissa Chapman, D.O. of Middle Cross Family Medical regularly treated Claimant from October 25, 2012 through April 16, 2015. (Tr. at 244-257, 384-404.)

examination in January 2014. (Tr. at 302-310.) Dr. Beard noted that Claimant denied having any ear surgery or significant tinnitus, but her larger complaint was background noise and difficulty distinguishing speech if there is background noise present. (Tr. at 302.) Claimant also mentioned that the batteries in her hearing aids only lasted about three to four hours of the day. (Id.) Dr. Beard observed that Claimant's speech was normal and she could hear and follow instructions without difficulty at a normal conversational volume with her hearing aids. (Tr. at 304.)

Evidence from Claimant's Treating Physician:

Sidney Lerfald, M.D. treated Claimant for her mental health conditions. (Tr. at 238-243, 277-279, 328-333, 336-341, 405-406, 423-424, 443-444.) Dr. Lerfald completed a Medical Source Statement form on Claimant's behalf in November 2013 in which he indicated that he had treated her since August 2007 and diagnosed her as Bipolar Manic (chronic). (Tr. at 277.) He indicated that Claimant's mental impairments caused no limitations in her activities of daily living. (Id.) He further noted that she was oriented in all spheres, and while her mood was anxious and irritable, her affect was broad, her perception was normal, as was her memory and social functioning. (Tr. at 278.) Dr. Lerfald further opined that she "has mood reactive fluctuations with stress including [increased] anxiety, racing thoughts, decreased concentration and avoidance" (Tr. at 277.), however, he deemed her "mildly deficient" in insight, concentration, and task persistence (Tr. at 278.) and he assessed her Global Assessment Functioning score at 65.[6] (Tr. at 277.)

---

[6] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 61-70 indicates that the person has "some mild symptoms (e.g. depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g. occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

In July 2013 Claimant reported that she went sight-seeing with friends in New York City and Dr. Lerfald noted that her mood was stable. (Tr. at 331.) On December 9, 2013, Claimant's mood was only mildly anxious, she had a broad affect, her energy was 8/10, and her concentration was good. (Tr. at 329.) By November 11, 2014, Dr. Lerfald noted Claimant's "[m]ood is good. Enjoyment present" and she "concentrates well". (Tr. at 338.) A noted dated May 26, 2015 indicated that Claimant reported being busy with household chores, her knee replacement "are doing well", her mood was euthymic, her energy and concentration were within normal limits and she is "able to relax". (Tr. at 406.) On August 25, 2015, Dr. Lerfald noted that her mood was "ok" and that Claimant sleeps with Ambien and she indicated that she "feels 'fine' in am". (Tr. at 423.) Dr. Lerfald observed "enjoyment present" and "mild residual anxiety". (Id.) On December 23, 2015, it was noted that Claimant's mood was good, she reported she was sleeping nine hours a night, she felt rested in the morning though she was not using CPAP, and her energy was "a little subpar". (Tr. at 465.)

On May 25, 2016, Dr. Lerfald completed another Medical Source Statement on Claimant's behalf in which he indicated that she had mostly no limitations in her ability to make occupational adjustments, with the exceptions of dealing with the public and dealing with works stress on which he indicated that she had moderate limitations. (Tr. at 470.) Dr. Lerfald wrote that Claimant's "bilateral hearing loss" supported this assessment. (Id.) He opined that she had no limitations in the area of "making performance adjustments", including understanding, remembering and carrying out complex, detailed or even simple job instructions. (Id.) With regard to "making personal social adjustments," Dr. Lerfald indicated that Claimant had moderate limitations in her ability to relate predictably in social situations and in her ability to complete a normal workday

and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. at 471.) He also indicated that she had "slight" limitations in her ability to behave in an emotionally stable manner. (Id.) He wrote that Claimant's "anxiety & hearing loss interfere as does chronic pain in lower back with degenerative arthritis" as support for this assessment. (Id.)

      State Agency Psychological Consultants:

In November 2013, Paula J. Bickham, Ph.D., reviewed the record evidence and concluded that Claimant had no restrictions in her activities of daily living; no difficulties maintaining social functioning; and only mild difficulties maintaining concentration, persistence, or pace. (Tr. at 53.) Dr. Bickham opined that Claimant's mental impairment was non-severe. (Tr. at 54.) In April 2014, Joseph Shaver, Ed.D., reviewed Claimant's records upon reconsideration and concurred with all of Dr. Bickham's findings, including that Claimant's mental impairment was non-severe. (Tr. at 67-68.)

      State Agency Medical Consultants:

In February 2014, Pedro Lo, M.D. reviewed Claimant's record evidence and completed a Physical Residual Functional Capacity Assessment form in which he opined that she was limited to light work with postural limitations, occasional hearing limitations (both ears), and environmental limitations. (Tr. at 55-57.) Dr. Lo further opined that these limitations would not preclude Claimant from performing her past work as an elementary school teacher as generally performed in the national economy. (Tr. at 58.) Upon reconsideration in April 2014, A. Rafael Gomez, M.D., reviewed Claimant's medical records and concurred with Dr. Lo's findings and opinion. (Tr. at 69-73.)

**The Administrative Hearing**

Judith Brendemuehl, M.D., Medical Expert Testimony:

Dr. Brendemuehl testified Claimant had no physical impairments that would meet or equal the listing. (Tr. at 33.) Dr. Brendemuehl stated Claimant had undergone a left total knee replacement in 2013 and a right total knee replacement in 2014, and that Claimant did very well with the right knee surgery. (Id.) Dr. Brendemuehl indicated the record also included Claimant's complaints of pain in her hands and low back but that the most recent evaluation in December 2015 documented a full range of motion of the cervical and lumbar spines. (Id.) With regards to Claimant's hearing loss, Dr. Brendemuehl noted that Claimant told consultative examiner Dr. Beard that her hearing aid batteries only last three to four hours, and Dr. Brendemuehl testified that this was very atypical and inexplicable, however, she stated hearing loss is not at a listing level. (Id.)

Dr. Brendemuehl testified that Claimant had been diagnosed with fibromyalgia, which Claimant reported was in remission. (Tr. at 34.) She further noted that in reference to Claimant's sleep problems, her Epworth score revealed mild daytime sleepiness, and the evidence confirmed Claimant had moderate obstructive sleep apnea that became severe in REM sleep. (Id.) Dr. Brendemuehl stated Claimant's BMI (body mass index) placed her in the "obese" category. (Id.)

Dr. Brendemuehl opined the evidence supported a light RFC with exclusions for never climbing ladders, ropes, and scaffolds, kneeling, and crawling due to Claimant's good response to her knee replacements. (Tr. at 34-35.) She further testified that based on the hearing testing that Claimant's "been in a classroom environment but she certainly needs a . . . fairly quiet environment with regard to the hearing testing." (Tr. at 35.)

<u>Claimant Testimony:</u>

Claimant testified she had worked as a middle school teacher for 35 years but began having panic attacks at work. (Tr. at 35.) She did not attribute her panic attacks to students or coworkers but did associate it with a new superintendent and increased stress at work. (Tr. at 36-37.) Additionally, she indicated she had difficulties with her bladder, high blood pressure, and knee pain that was exacerbated by the school's requirement that she remain standing on the job. (Tr. at 36.) Claimant stated she noticed that she had begun to take two Ativan pills prior to 2:00 p.m. each day to alleviate symptoms of panic by August 2013. (Tr. at 36, 37.) She admitted the medication made her "kind of dopey". (Tr. at 37.) Claimant testified she retired in September 2013 and was unable to return to her job due to her medications, feeling like she could not deal with the stress, and fearing additional panic attacks. (Tr. at 38.) She stated that her anxiety had improved since she was no longer working. (Tr. at 38-39.)

Claimant stated she treated with Dr. Lerfald for bipolar and panic attacks for which he prescribed her medications, but he also prescribed her medication for sleeping difficulties, restless leg syndrome, fibromyalgia, and arthritis. (Tr. at 38-39.) She testified that she sees Dr. Lerfald about every two and a half months. (Tr. at 39.) She indicated she had problems with her memory and would forget words; she had to hire a housekeeper because of hip pain. (<u>Id</u>.) Claimant explained her doctor recommended injections, but she was too afraid. (Tr. at 40.) She indicated she was walking with a cane and often used a cane when it snowed or the weather was bad since she fell at the mall the previous summer. (<u>Id</u>.)

Claimant explained that her hearing loss bothered her the worst as a middle school teacher because the students would laugh at her when she would ask them to repeat what they had said.

(Tr. at 41.) She confirmed that her hearing aid batteries would only last for three to four hours but never complained about it and have them checked, because she did not worry about it since she quit working. (Tr. at 41-42.) Claimant testified that her thyroid medication made her tired and sleepy. (Tr. at 42.) She described a normal day as waking around 7:30 a.m., preparing breakfast for her husband and herself, and doing light things around the house. (Id.) She stated she had a housecleaner every two weeks and attended a Bible class once a week. (Id.)

       Olen J. Dodd, Vocational Expert ("VE") Testimony:

       The VE described Claimant's past work as a teacher (DOT No. 092.227-010) at the skilled, light level. (Tr. at 44.) He testified that this work did not require kneeling, crawling or climbing ladders, ropes or scaffolds. (Id.) The VE testified that based on the code three classification, a teacher work environment is described as a "regular - - it's not a noisy environment . . . office type environment." (Id.) The VE also stated that a teacher can sit briefly during the day but must stand and walk three-fourths of the day to conduct lectures. (Tr. at 45.)

**Scope of Review**

       The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner

is based upon an appropriate application of the law. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." <u>Blalock</u>, 483 F.2d at 775.

## **Analysis**

As previously stated, Claimant argues the ALJ erred when she failed to include limitations in her RFC assessment identified by medical experts with respect to Claimant's ability to work in a "fairly quiet" environment. (Document No. 10 at 7-8.) She also asserts that remand is appropriate because her treating physician's May 2016 medical source statement qualifies as new and material evidence that could reasonably change the outcome of this proceeding. (<u>Id</u>. at 11.)

<u>Implementing Opinion Evidence in RFC Determinations</u>:

As an initial matter, the ALJ found that Claimant's hearing impairment did not meet Listing Section 2.08:

> Listing Section 2.08 requires a hearing impairment (not restorable by a hearing aid) manifested by (A) average hearing threshold sensitivity for air conduction of 90 decibels or greater and for bone conduction to corresponding maximal levels, in the better ear, determined by the simple average of hearing threshold levels at 500, 1,000 and 2,000hz or (B) speech discriminating scores of 40 percent or less in the better ear. The evidence in this case indicates the claimant's hearing impairment is not of the severity required to meet or equal the Listings.

(Tr. at 16.)

With respect to the hearing loss impairment, the medical evidence of record is scant, however, the ALJ noted that Claimant underwent a hearing evaluation on December 4, 2012 revealing a speech discrimination score of 88% at 65 dB on the right and 92% at 65 dB on the left,

thus necessitating hearing aids. (Tr. at 19.) The examination performed by Dr. Beard was notable insofar as he found Claimant wore bilateral hearing aids and responded to normal conversational volume. (Id.) The ALJ gave "great weight" to the opinions provided by Dr. Brendemuehl, which included her testimony that Claimant "would need a 'fairly quiet' environment". (Id.) Though the ALJ gave "significant weight" to Drs. Lo and Gomez, who both found Claimant would have "occasional hearing limitations", but "could perform her past work as generally performed", the ALJ afforded "greater weight to the opinion of Dr. Brendemuehl as the evidence supports a greater limitation of no kneeling or crawling." (Tr. at 20.) The ALJ further considered the VE testimony that Claimant's past job had a code 3 noise level, and acknowledged that it was "not a noisy environment and is consistent with an office type environment". (Id.) Ultimately, all this evidence relating to her hearing impairment resulted in the RFC restriction that Claimant should "never have exposure to a loud noisy environment." (Tr. at 16.)

The question presented is therefore whether the ALJ sufficiently reconciled the evidence with respect to Claimant's hearing problems: is the RFC restriction from a "loud noisy environment" an appropriate accommodation of the medical opinion evidence that Claimant has "occasional hearing limitations" and needs a "fairly quiet environment"? When formulating an RFC, an ALJ

> must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

Social Security Ruling 96-8p, 1996 WL 374184, at *7. "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a

medical source, the adjudicator must explain why the opinion was not adopted." Id. Ultimately, it is the responsibility of the Commissioner, not the court, to review the case, make findings of fact, and to resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted *supra*, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1994).

Claimant contends that the VE's characterization of a school teacher's work environment as a "code 3", which translates into a "moderate" noise intensity level[7] is not a "fairly quiet" work environment that Dr. Brendemuehl testified she needed. Beyond the VE's characterization of Claimant's past relevant work environment, and Claimant's testimony that she would ask her students to repeat things to her, there was no other evidence that described how noisy the classroom was or whether the noise level was consistent on a day-to-day, hour-by-hour basis. Interestingly, the noise factor was not the primary reason for which Claimant filed for disability, and she testified that she was unable to return to work due to her panic attacks and issues relating to her moods. (Tr. at 37-38, 44.) Dr. Brendemuehl did not offer an opinion that Claimant was unable to perform to her past relevant work due to her hearing impairment, in fact, she did not opine as to whether Claimant was precluded from work at all as a result of her impairments. However, both Drs. Lo and Gomez found that although Claimant had "occasional hearing limitation", both concluded that she could perform her past relevant work as generally performed. (Tr. at 58, 72.) It is also important to consider the fact that no medical expert found Claimant's hearing impairment met or equaled the Listings.

---

[7] The DOT noise intensity levels listed in Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, App. D, which the Commissioner attached as her Exhibit A. (Document No. 13-1 at 2.)

The RFC assessment "is the most" a claimant can still do despite her limitations. See 20 C.F.R. § 404.1545(a)(1). In this case, the ALJ found that Claimant is unable to tolerate a loud noisy environment, but concluded that she remained capable to performing her past relevant work as a school teacher. Is "fairly quiet" the same as "not a noisy environment" or the same as a "code three" classification for noise intensity level, or the equivalent to an "office type environment"? If these terms conflict with one another, then it would the ALJ's duty to resolve the conflicts. See Hays v. Sullivan, *supra*, and the Court does not re-weigh conflicting evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). From the aforementioned, the undersigned does not find that the ALJ rejected part or some of the limitations with respect to the hearing loss impairment expressed in the opinions provided by Dr. Brendemuehl or Drs. Lo and Gomez. The only exception noted by the ALJ concerned the additional limitations Dr. Brendemuehl found that Claimant should never kneel or crawl, which the ALJ adopted in her RFC assessment. Indeed, despite Claimant's "occasional hearing limitation", both State agency consultants found Claimant could still perform her past relevant work, which the ALJ also adopted in her RFC assessment. Accordingly, the ALJ's finding that Claimant should never be exposed to loud noisy environments, and ultimately, her conclusion that she remained capable of performing her past relevant work as a teacher, is "rational" and is based upon substantial evidence. Oppenheim v. Finch, 495 F.2d at 397.

New and Material Evidence:

Social Security Regulations allow two types of remand. Under the fourth sentence of 42 U.S.C. § 405(g), a court has the general power to affirm, modify or reverse the decision of the Commissioner, with or without remanding the cause for rehearing for further development of the

evidence. 42 U.S.C. § 405(g); <u>Melkonyan v. Sullivan</u>, 501 U.S. 89, 97-98, 111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991). Where there is new medical evidence, a court may remand under the sixth sentence of 42 U.S.C. § 405(g) based upon a finding that the new evidence is material and that good cause exists for the failure to previously offer the evidence. 42 U.S.C. § 405(g); <u>Melkonyan</u>, 501 U.S. at 98, 111 S.Ct. at 2163. The Supreme Court has explicitly stated that these are the only kinds of remand permitted under the statute. <u>Melkonyan</u>, 501 U.S. at 98, 111 S.Ct. at 2163.

Pursuant to 28 U.S.C. § 405(g), remand is warranted "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" Evidence is "new" if it is not duplicative or cumulative. <u>Wilkins v. Secretary, Dep't of Health & Human Serv.</u>, 953 F.2d 93, 96 (4th Cir. 1991) (<i>en banc</i>). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." <u>Id</u>. The Regulations governing the circumstances under which the Appeals Council is to review an ALJ decision shows that additional evidence will not be considered <u>unless</u> the evidence is new and material and relates to the period on or before the date of the ALJ decision. <u>See</u> 20 C.F.R. § 404.970(b). This does not mean that the evidence had to have existed during that period; rather, evidence must be considered if it has any bearing upon whether the claimant was disabled during the relevant period of time. <u>See</u> <u>Wooldridge v. Bowen</u>, 816 F.2d 157, 160 (4th Cir. 1987); <u>Cox v. Heckler</u>, 770 F.2d 411, 413 (4th Cir. 1985); <u>Leviner v. Richardson</u>, 443 F.2d 1338, 1343 (4th Cir. 1971). "Pursuant to the regulations . . . , if additional evidence submitted by a claimant does not relate to the time period on or before the ALJ's decision, the evidence is returned to the claimant, and the claimant is advised about her rights to file a new application." <u>Adkins v. Barnhart</u>, 2003 WL 21105103, at *5 (S.D.W.Va. May 5, 2003).

As discussed above, the evidence submitted to the Appeals Council consisted of Dr. Lerfald's May 26, 2016 medical source statement, which consisted of check boxes in which a medical provider may select the degree of a patient's limitations in a variety of work-, performance-, and social-related categories. (Tr. at 470-471.) Clearly, this evidence, provided just over a month after the ALJ issued her decision, relates to the same time period of the ALJ's decision. Dr. Lerfald opined that Claimant had moderate limitations in her abilities to deal with the public and to deal with work stresses, and specifically referenced her "bilateral hearing loss" as the findings that supported this assessment. (Tr. at 470.) Claimant's "hearing loss" was one of the factors that Dr. Lerfald caused her to have moderate limitations in her "ability to relate predictably in social situations" and in her "ability to complete a normal work day and work week without interruptions".[8] (Tr. at 471.) However, Dr. Lerfald also opined that Claimant had no limitations that precluded her "ability to adjust to a job", or "making performance adjustments". (Tr. at 470.) Claimant testified that "the hearing bothered [her] the worst because . . . the kids . . . if you keep saying say that again . . . they kind of laugh at you. So that bothered me the worst to start with." (Tr. at 41.) She admitted that she did not get new hearing aids, or mention the problems she had with her batteries, "because after I quit working, I wasn't worried about it[.]" (Tr. at 41-42.)

Claimant's hearing loss is neither "new evidence", nor is the fact it "bothered" her and she had trouble with the batteries in her hearing aids, as these issues were discussed during the administrative hearing, and were part of the medical evidence of record before the ALJ. Therefore,

---

[8] In addition to "hearing loss", Dr. Lerfald wrote that Claimant's "anxiety" and "chronic pain in lower back with degenerative arthritis" also interfere with these abilities, thus contributing to his findings that she had moderate limitations in these areas. (Tr. at 471.)

the question is whether Dr. Lerfald's opinion that Claimant had "moderate" limitations, with respect to her hearing loss, would have changed the outcome of the ALJ's decision, or whether Dr. Lerfald's evidence is "material".[9]

Dr. Lerfald was one of Claimant's treating physicians, and although he supplied a medical source statement that indicated Claimant had moderate limitations with respect to her bilateral hearing loss, there is no evidence in the record that he treated her for hearing issues.[10] However, Dr. Lerfald had been treating Claimant for her psychological issues for several years, which included bipolar, mood swings, depression, sleep problems, panic attacks, and appeared to monitor her treatment related to her thyroid condition and fibromyalgia, which is discussed more thoroughly, *infra*. [11] (Tr. at 14, 161, 164, 464.)

The undersigned notes that the ALJ determined that Claimant's hypothyroidism, hypertension, fibromyalgia, moderate sleep apnea, and dry eye syndrome were non-severe impairments, as the medical and non-medical evidence indicated all these conditions were stable, well controlled with medication, or otherwise did not significantly limit Claimant's ability to work. (Tr. at 13-14.) The ALJ also concluded that based on non-medical evidence of record, as well as the medical evidence which consisted solely of Dr. Lerfald's treatment notes, Claimant's

---

[9] Wilkins v. Secretary, Dep't of Health & Human Serv., 953 F.2d at 96.

[10] Shortly after the administrative hearing, Claimant sought a "Mental Assessment of Ability to do Work-Related Activities" from Dr. Lerfald, however, by letter dated January 11, 2016, Dr. Lerfald stated he was "unable to complete the mental assessment . . . until [Claimant's] thyroid is stable in 2-3 months." (Tr. at 462-464.) The medical records indicate that Claimant was treated for hypothyroidism by Dr. Samar Sankari. (Tr. at 397, 407.) A treatment note dated May 26, 2015 by Dr. Lerfald indicated that Dr. Sankari treated Claimant's hypothyroidism in March 2015 with medication. (Tr. at 444.) Pursuant to the ALJ's leaving the record open for an additional thirty days for the submission of evidence (Tr. at 46.), Claimant submitted Dr. Lerfald's December 23, 2015 treatment note, described *supra* at page 11 of this Proposed Findings and Recommendation. (Tr. at 465.)

[11] The medical record of evidence contains treatment notes from Dr. Lerfald that date from November 16, 2012 through January 11, 2016 (Tr. at 238-243, 277-280, 328-333, 336-341, 405-406, 423-424, 442-444, 462-465.), however, Claimant has asserted that Dr. Lerfald has been treating her since August 20, 2007. (Tr. at 226.)

"medically determinable mental impairments of affective disorder and anxiety" were also non-severe (Tr. at 14-15.), which was supported by two State agency psychological consultants' opinions that Claimant had no severe mental impairment. (Tr. at 15, 54, 68.) Nevertheless, besides the hearing loss, the ALJ did determine that Claimant's degenerative joint disease was a severe impairment (Tr. at 13.), although it did not meet or equal the Listings. (Tr. at 16.) Ultimately, after review of the medical evidence, including the expert opinions that Claimant's degenerative joint disease[12] had stabilized causing no additional limitations except for kneeling and squatting, the ALJ assessed the RFC accordingly, and found Claimant capable of performing her past relevant work. (Tr. at 17-20.)

Claimant is correct that Dr. Lerfald's May 2016 medical source statement would be the only such opinion in the record from a treating physician, and would therefore be afforded special weight[13] under the Regulations, and directs the Court's attention to this Circuit's holding in Meyer v. Astrue, 662 F.3d 700 (4th Cir. 2011) in support of her argument for remand. (Document No. 10 at 10.) The Meyer decision held that when the Appeals Council accepts additional evidence from a claimant, and then denies a claimant's request for review, there is no fact-finding with respect to the newly submitted opinion evidence or reconciliation of same with the conflicting and supporting evidence already of record. Id. at 707. The Meyer Court recognized that because there was no fact-finding with respect to the newly submitted treating opinion evidence, thus deserving of special

---

[12] The record indicates that Dr. S. Brett Whitfield treated Claimant for her right knee condition, and eventually performed a total knee replacement surgery. (Tr. at 17, 311-323, 447-461.) Dr. Wassim S. Saikali also treated Claimant for her right knee and lower back pain, osteoarthritis (Tr. at 17-18, 281-301, 372-380, 436, 445-446.), fibromyalgia (Tr. at 165, 372, 420.), stress (Tr. at 372.), and lumbar spondylosis/degenerative disc disease. (Tr. at 378, 380, 437, 446.) Dr. Lerfald's treatment note dated August 25, 2015 indicated that Claimant was being treated for arthritis in her lower back by Dr. Saikali. (Tr. at 423, 443.)

[13] This Court discussed the Meyer decision in Snider v. Colvin, No. 6:12-cv-00954, 2013 WL 4880158, at *8 (S.D.W.Va. Sept. 12, 2013). (Document No. 10 at 10.)

weight, the case needed to be remanded for the consideration of this evidence, otherwise, the ALJ's decision was unsupported by substantial evidence.[14] Id. Significant to the Fourth Circuit's holding was that the newly submitted opinion evidence concerned the claimant's limitations with respect to his back impairment from the claimant's treating physician, who performed the claimant's back surgery, and followed him for post-surgical care. Id. at 702.

What distinguishes this case from Meyer is that Dr. Lerfald did not treat Claimant for hearing impairments, he primarily treated her for bipolar and mood swings; his letterhead indicates that he is a board certified psychiatrist. (Tr. at 464.) As detailed in the footnotes *supra*, Dr. Lerfald did not exclusively treat Claimant for her sleep issues, fibromyalgia, or arthritis pain; indeed, Dr. Saikali treated her for lumbar spondylosis/degenerative disc disease (Tr. at 378, 380, 437, 446.) and lower back pain/osteoarthritis. (Tr. at 281-301, 372-380, 436, 445-446.) Dr. Lerfald also prescribed Claimant medications for "bipolar, mood swings, sleep problems, fibromyalgia, inflammation for arthritis pain, restless leg syndrome, and panic attacks".[15] (Tr. at 226.)

There is no evidence in the record that indicates Dr. Lerfald treated Claimant for hearing impairments, therefore his opinion that "bilateral hearing loss" contributed to her limitations is akin to the situation described in Section 404.1527(c)(2)(ii): "For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain." Because Dr. Lerfald's treatment notes,

---

[14] The Meyer Court also noted that the ALJ "emphasized that the record before it lacked 'restrictions placed on the claimant by a treating physician,' suggesting that this evidentiary gap played a role in its decision. [The claimant] subsequently obtained this missing evidence from his treating physician." Id.

[15] Pursuant to the Court Index Transcript, on December 22, 2015, Claimant submitted a form "Claimant's Medications". (Tr. at 226.)

mentioned *supra*, indicate that other physicians were specifically treating Claimant's osteoarthritis, lumbar spondylosis, and degenerative disc/joint disease, his opinion that Claimant's "chronic pain in lower back with degenerative arthritis" contributes to her limitations would be afforded less weight under the pertinent Regulations.

Notably, the case *sub judice* is similar to Snider v. Colvin insofar as the ALJ had all of Dr. Lerfald's records, including treatment notes submitted after the hearing, with the sole exception of the May 26, 2016 opinion, and explicitly relied on those records when finding Claimant's mental impairments were non-severe. 2013 WL 4880158, at *8. (Tr. at 14.) Indeed, no other treatment notes or medical records from Dr. Lerfald were submitted to the Appeals Council or to the ALJ. Further, because the record shows that Claimant was treated by other medical providers for her hearing impairment and orthopedic/degenerative joint disease impairments, the May 2016 medical source statement is immaterial: the ALJ had all the relevant medical evidence before her in order to engage in a proper fact-finding in support of her conclusions. Dr. Lerfald's newly submitted opinion does not change the evidence already of record before the ALJ, but more importantly, this evidence does not render the ALJ's "findings and conclusions contrary to the weight of the evidence in the record as a whole." Id. Therefore, it is unlikely that the evidence from Dr. Lerfald's May 2016 statement would have changed the outcome of this proceeding, and perhaps more so because it did not indicate that Claimant would be precluded from working in the capacity the ALJ determined, unlike the newly submitted evidence discussed in Meyer.[16] Meyer v. Astrue, 662 F.3d at 703.

---

[16] It is also worth mentioning that in Wilkins v. Secretary, Dept. of Health and Human Services, 953 F.2d 93 (4th Cir. 1991), that the "new" and "material" evidence submitted to the Appeals Council consisted of the claimant's treating psychiatrist's opinion that his patient was disabled "as of at least December 31, 1986" as a result of her psychiatric illness. Id. at 94-95. Moreover, this opinion was "uncontradicted evidence", therefore the Fourth Circuit concluded

In short, after considering all the evidence of record, including Dr. Lerfald's May 2016 opinion, the Appeals Council did not err in finding there was no basis to change the ALJ's decision. The Appeals Council correctly determined that the ALJ's findings and conclusions were supported by the weight of the evidence, in other words, the medical evidence of record regarding Claimant's medically determinable severe impairments confirmed the ALJ's conclusion that Claimant remained capable of her past relevant work and not disabled, Dr. Lerfald's opinion notwithstanding. There was no "evidentiary gap" that contributed to the ALJ's decision in this case, accordingly, the undersigned **FINDS** the decision is supported by substantial evidence. See, Id. at 707.

**Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's Motion for Judgment on the Pleadings (Document No. 10.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 13.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings

---

that the ALJ's decision that the claimant's disability did not begin before March 28, 1987 was not supported by substantial evidence. Id. at 96. In this case, Dr. Lerfald's opinion is contradicted, not just by opinion evidence, but also by the overall medical and non-medical evidence of record, which the ALJ had before her during her review of the evidence in support of her findings and conclusions.

and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: March 22, 2017.

Omar J. Aboulhosn
United States Magistrate Judge